MITCHELL STREET STATE BANK, Respondent, vs. FROEDTERT and another, Executors, imp., Appellants.

*January 9—April 29, 1919.*

*Guaranty to pay indebtedness to bank: Validity of corporate notes: Misappropriation of corporate funds: Connivance of bank: Conspiracy: Personal liability: Pleading: Loans in violation of law: Cashier's check: Claims against decedent: Failure to file: Invalidity of original obligation as defense to guaranty.*

1. The defendant E., as manager of two lumber companies, was permitted to and did conduct and control their business affairs as though he were the sole owner.    With F., another stockholder, he executed a so-called contract of guaranty whereby they jointly and severally agreed to pay to the plaintiff bank all loans and liabilities of every kind then owing or which might thereafter become due or owing by either of said companies or by E.    In an action upon such contract to recover sums loaned or advanced by the bank upon notes, or renewals thereof, executed by E. in the name of one or the other of said companies, although it appeared that during the period covering the transactions in question E. was a director and, a part of the time, president of the plaintiff bank, that he was misappropriating some of the funds of the companies, and that some of their funds—not, however, proceeds of the notes in question—were received from him, as loans or otherwise, by

Mitchell St. State Bank v. Froedtert, 169 Wis. 120.

the plaintiff's cashier personally, findings by the trial court to the effect that plaintiff was not chargeable with complicity or connivance with E. in his frauds upon the companies in connection with any of said transactions, and was not guilty of negligence in respect thereto such as to amount to a fraud on its part upon the companies or upon said F., are *held* to be supported by the evidence.

2. Even if E. received to his own use proceeds of the notes of the lumber companies, his personal liability is covered by the guaranty sued on; and all the facts necessary to show such liability having been proved at the trial without objection and being substantially undisputed, it is immaterial that such personal liability was not specifically pleaded in the complaint.

3. A guaranty of payment may cover existing indebtedness to a bank at the time the guaranty is made, even though such indebtedness exceeds the statutory limitation prescribed in sec. 2024—32, Stats.

4. In this case the evidence is *held* not to show that, after the guaranty in suit was given, there was any violation of sec. 2024—32, Stats., limiting the liability of any person to any bank, or of sec. 2024—34, prohibiting loans by a bank to its officers except upon certain conditions.

5. It appearing that E., managing the business of the lumber companies as if he were the sole owner, was using his personal account in the plaintiff bank and drawing checks thereon for the benefit of the companies, that he had authority to make the notes in question as he did, and that the bank did not profit by the credits given to him and did not know that he was misappropriating any of the proceeds of the notes in question, and it not appearing that after he deposited the proceeds of said notes to his personal account he used them for his personal benefit, the mere fact that such proceeds were credited to his account did not necessarily make the notes void. At most the knowledge which the bank had was only sufficient to put it upon inquiry as to the validity of the notes, and such inquiry would not have shown that E. had no authority to make the notes.

6. When the bank discounted one of the notes in question, executed by E. in the name of one of the lumber companies, it issued to him a cashier's check payable to the order of said company, which check was indorsed in blank by E. in the name of the company and in his own name and then deposited to his personal account. *Held,* that this check was commercial paper and issued for a valuable consideration, and even if the funds derived from the check were misappropriated the note for which the check was given was nevertheless valid if duly executed.

7. The action upon the guaranty having been commenced against both guarantors during the lifetime of F., and revived against his executors after his death, the cause of action based upon the indebtedness of E. to the bank was not barred by the failure to present it as a claim against F.'s estate within the time limited for the filing of claims by creditors.

8. The guaranty in suit, being a direct promise by the guarantors to pay, is not within the rule governing guaranties to pay if the principal debtor fails to do so.

APPEAL from a judgment of the circuit court for Milwaukee county: OSCAR M. FRITZ, Circuit Judge. *Affirmed.*

This action was commenced by the plaintiff against the defendants Stephen H. Eller and William Froedtert upon an agreement in writing, a copy of which is set out in the findings of fact.

After the commencement of the action William Froedtert died, and the action was revived against his executors.

The complaint contains three causes of action. The first cause of action sets up a right of recovery upon a note of the South Side Lumber Company in the sum of $12,500, dated July 2, 1914; and the second cause of action is upon a note of $10,000 of the Eighth Avenue Lumber Company, dated July 1, 1914; and the third cause of action upon a $5,000 note of the Eighth Avenue Lumber Company, dated July 12, 1914.

The answer denies liability and sets up several defenses, which so far as material will be referred to in the opinion.

The case was tried to the court and a jury, and at the close of the evidence both parties moved for a directed verdict, whereupon the jury was discharged.

The court found: That the plaintiff was a banking corporation duly organized and existing, with a capital stock outstanding of $50,000. That the South Side Lumber Company was a corporation, duly organized and existing, and engaged in the wholesale and retail purchase and sale of lumber. That William Froedtert, deceased, and defendant Stephen H. Eller were the only stockholders of said corpora-

tion.    That said Eller was from April 26, 1909, to November 9, 1914, vice-president, acting president, and manager of said corporation, and was permitted to and did manage and control the business and affairs of said corporation as though he were the sole owner.    That the Eighth Avenue Lumber Company was a corporation duly organized January 24, 1911, for the purpose of conducting a wholesale and retail lumber business, with an authorized capital stock of $20,000.    That no certificate of shares was ever issued and no meeting of any kind ever held.·    That defendant Eller conducted the business of said Eighth Avenue Lumber Company with the moneys and property of the South Side Lumber Company and managed and controlled said business as though he were the sole owner thereof.    That defendant Eller was a member of the board of directors of plaintiff from the time it commenced to do business in 1906 up to October 12, 1914.  . That from November 8, 1911, until October 12, 1914, he was the president of the plaintiff, and from January 6, 1908, to October 12, 1914, he was a member of the discount committee of plaintiff.  ·That on or about April 1, 1911, the following agreement was entered into between plaintiff and William Froedtert, deceased, and Stephen H. Eller, to wit:

"In consideration of one dollar, to each of us in hand paid, the receipt whereof is·hereby acknowledged, we hereby agree jointly and severally to pay or cause to be paid to the *Mitchell Street State Bank* of Milwaukee all loans, drafts, overdrafts, indorsements, accounts, checks, notes, interest, demands, and liabilities of every kind and description now owing or which may hereafter· become due or owing by South Side Lumber Company and Eighth Avenue Lumber Company and by Stephen H. Eller, whenever the same or any part thereof shall be due.    All proceedings to collect from the principal debtor or any one else are expressly waived, and we waive demand, notice, and protest of every kind and agree that said bank may without notice surrender or release securities held

by it and grant extensions of time to, and from time to time renew any obligations of, said principal debtors without notice.

"This is a continuing guaranty.

"Milwaukee, Wis., April 1, 1911.

(Signed) "WILLIAM FROEDTERT.

"STEPHEN H. ELLER."

That on the 20th day of May, 1915, said William Froedtert died, leaving a last will and testament, and the above-named defendants, *Kurt R. Froedtert* and *C. H. Kinneke,* are the duly appointed, qualified, and acting executors of said will. That March 2, 1910, said Eller made, executed, and delivered to plaintiff a promissory note in the name of the South Side Lumber Company, payable ninety days from date, with interest at five per cent., in consideration of which note plaintiff delivered to said Eller its cashier's check for $15,000, payable to the order of said South Side Lumber Company, which check was indorsed in blank by said Eller in the name of the South Side Lumber Company and also in his own name and redelivered to the plaintiff by said Eller with the request that it be credited by plaintiff to the account of said Eller. That thereby all of the proceeds of said note were, to the knowledge of the plaintiff at the time of discounting of said note, applied to the individual use and benefit of said Eller, and that notwithstanding that the acts of said Eller and plaintiff in relation to the discounting of said note were such that presumably said Eller was using the proceeds thereof for his individual use and benefit, plaintiff failed to make any reasonable inquiry or exercise reasonable diligence to ascertain whether Eller was authorized to appropriate the proceeds of said note of $15,000 to his own use. That said South Side Lumber Company never received any consideration for said note and never became liable to plaintiff thereon. That when said note became due it was not paid, and on or about the date of its maturity it was, at the request of said Eller, renewed and subsequently likewise renewed from time

to time.    That nothing was paid thereon except interest as the same accrued from time to time until on or about March 16, 1911, when there was credited thereon $5,000 for and on account of a note executed in the name of the Eighth Avenue Lumber Company by the direction of said Eller, leaving on April 1, 1911, unpaid on said original note the sum of $10,000 and such interest as had accrued from the last interest payment.    That on April 1, 1911, said note was renewed by the plaintiff at the request of said Eller for the amount remaining unpaid, to wit, $10,000.    That on or about May 9, 1911, said Eller presented to plaintiff for discount a note signed by him in the name of the South Side Lumber Company for $2,500, which note was discounted by plaintiff, and the sum of $2,479.17, proceeds thereof, less discount, was, at the direction of said Eller, credited by plaintiff to his account. That thereafter said sum of $2,479.17 was paid out by plaintiff to said Eller at his request or upon his order, for his own use and benefit, said South Side Lumber Company receiving no consideration therefor.    That notwithstanding that plaintiff had knowledge that said Eller was presumably using the proceeds of said note for his own benefit, it failed to make any reasonable inquiry or exercise reasonable diligence to ascertain whether he was authorized to appropriate the proceeds of said note to his own use, and said South Side Lumber Company never became liable to plaintiff upon said note.    That each of said notes was thereafter renewed from time to time at the request of said Eller, and thereafter on January 2, 1912, one renewal note for $12,500 to take the place of the renewals of said two last-mentioned notes was executed by said Eller in the name of the South Side Lumber Company and by him delivered to plaintiff, and said note for $12,500 was thereafter renewed from time to time until the execution of the note for that amount dated July 2, 1914, described in the complaint.    That all of said renewals of said notes on or after April 1, 1911, were accepted by plaintiff on the faith of said guaranty and in reliance thereon by plaint-

iff.    That said last-mentioned note, dated July 2, 1914, be-
came due October 2, 1914, according to its terms, and de-
mand for payment was duly made of and from the South
Side Lumber Company, also from William Froedtert and
Stephen H. Eller, but payment was and ever since has been
refused, and no payment whatever since date of said note or
otherwise, except as hereinbefore stated, has been made
either on account of said note or on account of the considera-
tion for which the same was given, or on account of the sum
of $15,000 credited to the account of said Eller on account
of said cashier's check.

That on or about March 2, 1911, said Eller, purporting to
act as president of said Eighth Avenue Lumber Company,
made, executed, and delivered to plaintiff a promissory note
for $5,000 in the name of said Eighth Avenue Lumber Com-
pany by said Eller as president, payable thirty days after date
with interest, and at the request of said Eller, and in consid-
eration of the receipt of said note so executed and delivered,
said Eighth Avenue Lumber Company was duly credited with
the proceeds of the note, and the amount of such credit was
thereafter duly paid out by plaintiff on orders of said Eighth
Avenue Lumber Company.    That on or about March 16,
1911, said Eller, purporting to act as president of the Eighth
Avenue Lumber Company, made, executed, and delivered to
plaintiff a promissory note for $5,000, executed by said Eller
in the name of said Eighth Avenue Lumber Company, pay-
able thirty days after date, with interest, and at the request
of said Eller said note was substituted for a note for $5,000
which had been executed by said Eller in the name of said
South Side Lumber Company and delivered by him to plaint-
iff in renewal of the series of renewal notes executed by him
in the name of said South Side Lumber Company and there-
tofore given by him in partial renewal of said note for
$15,000, dated March 16, 1911.    That upon the face of that
transaction by which said note of said Eighth Avenue Lum-
ber Company, dated March 16, 1911, was substituted for a

note signed in the name of the South Side Lumber Company, there was nothing which admitted of any inference that said Eighth Avenue Lumber Company was receiving any advantage or consideration for its note dated March 16, 1911, and that plaintiff had knowledge of such wrongful use of said note by said Eller, because of which said note is not binding upon said Eighth Avenue Lumber Company. That nothing has been paid on account of the principal of either of said notes dated March 2, 1911, and March 16, 1911, respectively, and signed in the name of said Eighth Avenue Lumber Company. That thereafter said notes at maturity were from time to time, at the request of said Eller, renewed, said Eller purporting to act as president of said Eighth Avenue Lumber Company, and on or about February 1, 1912, after a series of renewals of each of said notes, the same were consolidated into a single note for $10,000, which was thereafter from time to time renewed, all of said renewals being executed by said Eller purporting to act as president, or by C. L. Wosgaard, as manager of said Eighth Avenue Lumber Company, by direction or authority of said Eller, and that the last of said renewal notes is the note for $10,000 dated July 1, 1914. That in so far as said note for $10,000 is in renewal of said $5,000 note originally given March 16, 1911, it is without consideration in so far as said Eighth Avenue Lumber Company is concerned, and to that extent said corporation is not liable thereon.

That all of said renewal notes signed in the name of said Eighth Avenue Lumber Company were accepted by plaintiff at the request of said Eller on the faith of and in reliance upon said guaranty signed by said William Froedtert and Stephen H. Eller April 1, 1911. That upon maturity of said note dated July 1, 1914, on October 1, 1914, demand was duly made of said Eighth Avenue Lumber Company, William Froedtert, and Stephen H. Eller for payment thereof, with interest, but no part thereof or any interest since October 1, 1914, has been paid, and no part of the con-

sideration thereof or of the original notes, of which said note dated July 1, 1914, was the final renewal, has been paid. That on or about July 12, 1914, said Eller, purporting to act as president of said Eighth Avenue Lumber Company, delivered a note for $5,000, dated July 12, 1914, signed "Eighth Avenue Lumber Co., C. L. Wosgaard, Mgr.," to plaintiff as the last of a series of notes given in renewal of the note discounted by plaintiff September 17, 1912, for the benefit of the Eighth Avenue Lumber Company. That on said September 17, 1912, plaintiff had duly given on its books of account credit to said Eighth Avenue Lumber Company for $5,000 by applying $1,000 thereof in payment of a note which had been given by said company to plaintiff June 19, 1912, in consideration for an equivalent amount then duly credited to the account of said company; and further by crediting the balance of $4,000 to said Eighth Avenue Lumber Company in its checking account on the books of plaintiff, through which said company has withdrawn said amount by checks issued for the use and benefit of said company. That said note dated July 12, 1914, became due October 10, 1914. That demand for payment was duly made, but no part thereof, or of the consideration for which said note was received by plaintiff, has been paid, and that there is now due thereon the sum of $5,000, with interest at six per cent. per annum from October 10, 1914. That the credits given to said Eighth Avenue Lumber Company by plaintiff September 17, 1912, and upon all renewals thereof, were given to said Eighth Avenue Lumber Company in reliance upon said guaranty and upon the faith and credit thereof.

"That, in so far as said Stephen H. Eller appropriated to his own use and benefit the proceeds of said note and cashier's check, dated March 2, 1910, and of the said notes signed in the name of said South Side Lumber Company, and in the name of said Eighth Avenue Lumber Company, the plaintiff did not profit thereby in any manner whatsoever. That the plaintiff had no knowledge that such proceeds were being

misappropriated by said Stephen H. Eller in defraudation of the rights of said South Side Lumber Company or said Eighth Avenue Lumber Company, or of any fraudulent purpose or intent on the part of said Stephen H. Eller in connection with any such transactions.    That the plaintiff is not chargeable with complicity or connivance with said Stephen H. Eller in any frauds which he practiced upon either said Eighth Avenue Lumber Company or said South Side Lumber Company in connection with any of said transactions; and that, in respect to said transactions, the plaintiff was not guilty of negligence of such character as to amount to a fraud on plaintiff's part on said South Side Lumber Company, or said Eighth Avenue Lumber Company, or said William Froedtert."

The court concluded that at the time of the commencement of this action and ever since said Eller, as principal debtor, was liable and indebted to plaintiff in the sum of $15,000, with interest at five per cent. per annum on $10,000 thereof from October 2, 1914, and at the rate of six per cent. on $5,000 thereof from October 1, 1914, and also in the sum of $2,500 with interest thereon at five per cent. per annum from October 2, 1914; and said Eighth Avenue Lumber Company, as principal debtor, was liable and indebted to plaintiff in the sum of $5,000, with interest thereon at six per cent. per annum from October 1, 1914, and the further sum of $5,000, with interest at six per cent. from October 10, 1914.    That the plaintiff is entitled to judgment against defendant Stephen H. Eller and against the defendants *Kurt R. Froedtert* and *C. H. Kinneke* as executors of the last will and testament of William Froedtert, deceased, for the sum of $27,500, with interest on the sum of $12,500 at five per cent. per annum from October 2, 1914, and interest on the sum of $10,000 from October 1, 1914, at six per cent. per annum, and interest on the sum of $5,000 from October 10, 1914, at six per cent. per annum, together with the costs and disbursements of this action.    Such judgment as against said executors shall be payable only out of funds of the estate of

said William Froedtert, deceased, in their hands or posses-
sion as such executors, and shall direct the payment by them
of such judgment out of any such funds in their hands or
possession as such executors or applicable by law to the pay-
ment of such judgment.

Judgment was entered accordingly, from which this ap-
peal was taken.

For the appellants there were briefs by *Bohmrich & Gabel*
of Milwaukee, and oral argument by *Louis G. Bohmrich.*

For the respondent there was a brief by *Flanders, Fawsett
& Smart* of Milwaukee, and oral argument by *Edward M.
Smart.* They argued, among other things, that the charge
of conspiracy, which is the foundation of the defense, is
completely negatived by the findings of the court upon ample
and practically undisputed evidence. The court was evi-
dently of the opinion that there was no showing of con-
spiracy between Eller and Egerton, and even if there were
this did not make the bank a party to the conspiracy. The
theory of the trial court was that while the lumber companies
were not bound by the notes, the proceeds of which were
credited to Eller's account, Eller at least became personally
liable for the proceeds of the notes which he received from
the bank, and, Eller's personal liability being within the
terms of the guaranty equally with the liability of the two
corporations, the guarantors were liable. All of the facts
from which the inference and conclusions of the trial court
were drawn having been brought out upon the trial without
objection on any ground relating to the pleadings and being
entirely undisputed, the court was at liberty to disregard the
mere form of the pleadings and base its findings and judg-
ment upon the undisputed facts. The court should have
held the original $15,000 note (note A) and the original
$2,500 note (note F) to be valid obligations of the South
Side Lumber Company. If Eller was not authorized to
issue and discount corporate paper and cause the proceeds
to be credited to his personal account, still under a guar-

anty of this character the guarantor cannot set up that defense.    This so-called guaranty is a direct promise to pay by the guarantors and cannot be considered in the same light as a guaranty to pay if the principal fails to pay.    *International T. Co. v. Mabbott,* 159 Wis. 423, 150 N. W. 429; *John A. Tolman & Co. v. Smith,* 159 Wis. 361, 150 N. W. 419; *Drovers' Dep. Nat. Bank v. Tichenor,* 156 Wis. 251, 145 N. W. 777; 20 Cyc. 1420–1422.    See, also 20 L. R. A. N. S. 1000; *Mason v. Nichols,* 22 Wis. 376; *Hubbard v. Haley,* 96 Wis. 578, 71 N. W. 1036; *Luce v. Foster,* 42 Neb. 818, 60 N. W. 1027; *Holm v. Jamieson,* 173 Ill. 295, 50 N. E. 702, 45 L. R. A. 846; *Backus v. Feeks,* 71 Wash. 508, 129 Pac. 86, Ann. Cas. 1914C, 553; *Maledon v. Leflore,* 62 Ark. 387, 35 S. W. 1102; *Klein v. German Nat. Bank,* 69 Ark. 140, 61 S. W. 572; *Weare v. Sawyer,* 44 N. H. 198.

The following opinion was filed February 4, 1919:

KERWIN, J.    The appellants assign seventy-six errors, and favor us with a voluminous brief discussing at great length questions of fact as well as questions of law.    We shall not attempt to follow counsel in all the details of their discussion, because we believe the case is ruled by a few propositions, which we shall treat in this opinion.

1. It is argued that a conspiracy existed between Eller and J. F. Egerton, cashier of plaintiff, to defraud Froedtert and the lumber companies.    This charge is based mainly upon the contention that the proceeds of some of the notes made by Eller as president of the lumber companies were credited to his personal account, and that Eller colluded with Egerton, officer of plaintiff, in misappropriating money which belonged to the lumber companies.

The court below found against this contention upon sufficient evidence, and in a written opinion in the record said:

"During the period of the transactions involved in this action S. H. Eller was undoubtedly guilty of misappropriating some of the funds of the South Side Lumber Company

and of the Eighth Avenue Lumber Company. But for the fact that he was permitted to manage and control their affairs as the sole owner thereof, his conduct in those transactions with the plaintiff might well have aroused the suspicions of those dealing with him. However, the evidence does not establish that Egerton received any of the proceeds of the loans which plaintiff seeks to recover in this action. Likewise it does not establish that the plaintiff is chargeable with knowledge that the proceeds of any of those loans were actually misappropriated by Eller in defraudation of the rights of the South Side Lumber Company and the Eighth Avenue Lumber Company.

"This evidence does establish that, on the dates presently stated, checks for the following amounts issued by Eller in the name of the Eighth Avenue Lumber Company to Egerton were duly indorsed and deposited by Egerton to his credit, and honored by the plaintiff out of the deposits of the Eighth Avenue Lumber Company, to wit: April 4, 1911, $500; June 3, 1912, $1,500; June 4, 1912, $3,000. At the time those checks were issued to Egerton the Eighth Avenue Lumber Company was not indebted to him, and he denies that he had any personal transaction with it. Likewise, those checks were never charged to him on that corporation's books, but it does not appear that either Egerton or plaintiff had knowledge of the failure to make such entries. The evidence also establishes that on April 4, 1911, Eller charged himself with $2,000 on the books of the South Side Lumber Company (page 87, Exhibit 162, for identification) for money belonging to that corporation which he applied to his own use on that date in making a loan of $2,500 to Egerton. However, in each instance, prior to the time that Egerton received those checks and that loan, the credits obtained on account of the loans which plaintiff seeks to recover in this action had been exhausted, with the exception of $5,000 credit given to the Eighth Avenue Lumber Company on September 17, 1912. On the other hand, the latter credit was not given until after those checks had been issued and that loan made to Egerton, and hence that credit could not have been used for his benefit. But for the suspicion naturally aroused by the absence of any explanation as to those three checks and Eller's omission to enter them on the corpora-

tion's books, there would be no basis for a suggestion that funds belonging to the Eighth Avenue Lumber Company had been misappropriated to the use of Egerton, or that he knew that there had been any misappropriation by virtue of those checks. However, even if Egerton had benefited by such misappropriation in those instances, with knowledge of the source of the moneys received by him, it would not follow under the evidence that the plaintiff is chargeable with knowledge acquired by Egerton in a transaction which was wholly for his personal purposes.

"Consequently the evidence does not establish that the plaintiff, as Egerton's principal, is chargeable with connivance with Eller in his frauds upon those corporations, or that the plaintiff is chargeable with negligence of such character as to amount to a fraud on those corporations and William Froedtert."

The evidence in the case tends to show that Eller was entitled to have and handle the proceeds of the notes of the lumber companies. The evidence also shows that Eller had full charge and control of the business of both lumber companies and the right and authority to handle the funds of such companies. It is clear that the defense of conspiracy is wholly without merit.

2. The so-called contract of guaranty set out in the findings clearly covers any personal liability of Eller to the bank; and even though Eller received money, proceeds of notes of the lumber companies, still such personal liability of Eller's is clearly covered by the guaranty upon which suit is brought. The guaranty covers "all loans, drafts, overdrafts, indorsements, accounts, checks, notes, interest, demands, and liabilities of every kind and description now owing or which may hereafter become due or owing by South Side Lumber Company and Eighth Avenue Lumber Company and by Stephen H. Eller."

It is claimed that the personal liability of Eller could not be shown under the pleading. This contention is without merit, as clearly appears from the record. All the facts

necessary to be proved under this head were brought out upon the trial practically without objection and were substantially undisputed. The guaranty is "a joint and several" agreement. Under the evidence and findings in the case the personal liability of each signer of the guaranty was established.

3. It is further argued by counsel for appellants that the plaintiff violated secs. 2024—32 and 2024—34, Stats., limiting the liability of any person to any bank and prohibiting loans to officers except upon certain conditions.

It does not appear that there has been any violation of the above statutes, for several reasons. In the first place, we know of no reason why the guarantors could not guarantee the payment of existing indebtedness to the plaintiff at the time the guaranty was made, even though such indebtedness exceeded the statutory limitation. It appears from the record that the only note discounted by plaintiff after the guaranty, the proceeds of which were credited to Eller's private account, was a $2,500 note made May 9, 1911, by the South Side Lumber Company.

It further appears from the evidence and findings that at no time after the execution of the guaranty was the statutory limitation violated by Eller or the lumber companies. The $15,000 note, dated March 2, 1910, was reduced to $10,000 by a note dated March 16, 1911, for $5,000, and a new note given for the $10,000, dated March 16, 1911, and this latter note was afterwards and on January 2, 1912, consolidated with a $2,500 note, dated May 9, 1911, and a new note for $12,500 given for the amount, and such renewal constitutes the plaintiff's first cause of action.

Two notes of $5,000 each, dated respectively March 2 and March 16, 1911, were consolidated into a note of $10,000, dated February 1, 1912, and the renewal thereof is the basis of plaintiff's second cause of action. The renewal of a note dated September 17, 1912, for $5,000, is the basis of plaint-

iff's third cause of action.   The proceeds of the two notes of $5,000 each·were paid to the Eighth Avenue Lumber Company, the maker of said notes.

So the argument that the bank exceeded its statutory limitation in making loans either·to the lumber companies or to Eller is without merit.

It also appears that the $15,000 note made by the South Side Lumber Company was discounted by plaintiff, and it issued and.delivered a cashier's check to Eller, payable to the order of the South Side Lumber Company, which check was indorsed in blank by Eller in the name of·the lumber company and in his own name and redelivered to the plaintiff bank with direction to be credited to his own account, which was done; that the proceeds of other notes of the lumber companies were credited to Eller.   But it appears from the evidence and findings that Eller managed the business of the lumber companies as if he were the sole owner and that he was using his personal account for the benefit of the South Side Lumber Company.   The cashier's check issued to the lumber company for the $15,000 note amounted to a loan of $15,000 to said company.

The court below found that the South Side Lumber Company was not liable on this note or upon the $2,500 note, because the proceeds were credited to Eller, that plaintiff failed to make reasonable inquiry, and that the lumber company received no consideration for the note.

Counsel for respondent asks a review of these findings under sec. 3049a, Stats., and excepted to such findings, and filed in this court notice as required by the statute.

In addition to the findings above referred to, the court found that the bank did not profit by the credits given to Eller and had no knowledge that the proceeds were being misappropriated in defraudation of the rights of the lumber company or of any fraudulent purpose or intention on the part of Eller; that the bank was not chargeable with any

complicity or connivance with Eller in any fraud upon the lumber company; and that the bank was not guilty of any negligence of such character as to amount to a fraud.

The evidence does not show that after the proceeds were credited to Eller's account he used them for his personal benefit. The fact that the proceeds were credited to his account did not necessarily make the notes void. It appears that he had authority to make the notes as he did. At best, the knowledge which the bank had of all the circumstances was only sufficient to put it upon inquiry as to the validity of the notes. *Pelton v. Spider Lake S. & L. Co.* 132 Wis. 219, 112 N. W. 29.

Assuming that the facts were sufficient to put the plaintiff upon inquiry, it was only chargeable with such knowledge as inquiry would have discovered, and nothing would have been discovered sufficient to show that Eller did not have authority to execute the notes. *St. Clair v. Rutledge,* 115 Wis. 583, 92 N. W. 234. It appears from the record that Eller was invested with all the powers of the stockholders, board of directors, and officers. As appears from the record, he was the whole thing and had absolute authority. He was permitted to run the business as if it were his own. Moreover, the evidence shows that he was checking against his individual account for the benefit of the lumber companies. In addition to this, the cashier's check given on discount of the $15,000 note was made out in favor of the South Side Lumber Company. This check was commercial paper and issued for a valuable consideration, and, even if the funds derived from this check were misappropriated, the note for which the check was given was, nevertheless, valid if duly executed. *Drinkall v. Movius State Bank,* 11 N. Dak. 10, 88 N. W. 724, 57 L. R. A. 341; *Henry v. Allen,* 151 N. Y. 1, 45 N. E. 355, 36 L. R. A. 658.

4. It is further insisted that the cause of action under the guaranty, based upon the indebtedness of Eller, is barred by order of the county court limiting the time for filing

Waldum v. Lake Superior T. & T. R. Co. 169 Wis. 137.

claims.    There is no merit in this contention.    The suit was
brought in Froedtert's lifetime and revived against his ex-
ecutors.    The suit involves a proceeding against the estate
of Froedtert.    It is a remedy to which the plaintiff is en-
titled.

5. In the case at bar the so-called guaranty is a direct
promise by the guarantors to pay, and does not fall within the
rule of that class of guaranties to pay if the principal fails to
do so.    *International T. Co. v. Mabbott,* 159 Wis. 423, 150
N. W. 429; *John A. Tolman & Co. v. Smith,* 159 Wis. 361,
150 N. W. 419; *Drovers' D. Nat. Bank v. Tichenor,* 156
Wis. 251, 145 N. W. 777.

We find no prejudicial error in the exclusion of evidence.
Upon any theory of this case we think it clear that the judg-
ment below is right and must be affirmed.

*By the Court.*—Judgment affirmed.

Eschweiler, J., dissents.

A motion for a rehearing was denied, with $25 costs, on
April 29, 1919.