Lawrence HUPF, Plaintiff-Appellant,

v.

CITY OF APPLETON, CNA Insurance Company, Defendants-Respondents,†

John DOE, ABC Insurance Company, Jeff Doe and DEF Insurance Company, Defendants.

Court of Appeals

*No. 91–0919. Submitted on briefs September 9, 1991.—Decided October 22, 1991.*

(Also reported in 477 N.W.2d 69.)

†Petition to review denied.

On behalf of plaintiff-appellant, the cause was submitted on the briefs of *Daniel J. Hoff* of *Glenn & Hoff, S.C.* of Appleton.

On behalf of defendants-respondents, the cause was submitted on the brief of *Peter M. Farb* of *Gabert & Williams* of Appleton.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J.   Lawrence Hupf, struck in the eye and injured by a thrown ball as he was walking in a city park, appeals a summary judgment dismissing his claims against the city of Appleton. The circuit court ruled that the city was not liable by virtue of the landowner's recreational immunity statute, sec. 895.52, Stats. The court also ruled that Hupf had signed an exculpatory contract releasing the city from any damage claims when he registered to participate in a softball league organized by the city parks and recreation department. Because disputed factual issues exist as to whether Hupf's activities at the time of injury fall within the statutory definition of recreational activity and because the release raises questions as to whether the parties intended to include Hupf's non-game activities, we reverse and remand for further proceedings.

When reviewing a summary judgment, we apply the standard set forth in sec. 802.08(2), Stats., in the same manner as the circuit court. *Kreinz v. NDII Secs. Corp.,* 138 Wis. 2d 204, 209, 406 N.W.2d 164, 166 (Ct. App. 1987). In pursuit of summary judgment, the moving party has the burden to establish the absence of a genuine issue as to any material fact. *Id.* We do not decide an issue of fact, but only whether there is a genuine issue of material fact in dispute. *Id.* We must reverse the summary judgment if we determine that the circuit court erred by deciding that no material factual dispute existed. *Id.* Doubts as to the existence of a genuine issue of material fact should be resolved against the moving party. *Id.* Supporting and opposing affidavits must be made on personal knowledge and must set forth facts as

would be admissible in evidence. Section 802.08(3), Stats.

## RECREATIONAL IMMUNITY

Wisconsin's recreational immunity statute provides that owners of land are not liable for injury to a person engaging in a recreational activity on the owner's property. *Taylor v. City of Appleton,* 147 Wis. 2d 644, 645, 433 N.W.2d 293, 294 (Ct. App. 1988). This law defines an owner to include a governmental body. Section 895.52(1)(g), Stats. "Recreational activity" includes "any outdoor activity undertaken for the purpose of exercise, relaxation or pleasure, including . . . any . . . outdoor sport" but excepts "any organized team sport activity sponsored by the owner of the property on which the activity takes place." Section 895.52(1)(g), Stats.

Hupf's complaint alleged that he was at Memorial Park, walking near the bleachers next to the outside fence of the field of play when he was struck in the eye by a softball, suffering injuries. He alleged various acts of negligence by the city causing his injuries. The city's answer denied Hupf's allegations and also raised the recreational immunity statute as an affirmative defense. The city, in support of its motion for summary judgment and in apparent anticipation of Hupf's assertion that the activity in question fell within one of the statutory exceptions to recreational immunity, filed affidavits showing that it did not charge a spectator fee or operate the parks for profit. The city's evidentiary material did not speak to the circumstances surrounding Hupf's injuries. Hupf's affidavit, filed in opposition to the city's motion for summary judgment, stated:

That my injury did not occur while participating in any activity. Instead it occurred while walking between baseball diamonds near the concession stand. I was hit with a ball in the walkway provided to people at the park. I was hit when two people were practicing and warming up throwing the baseball.

. . . That the reason for my being present at Memorial Park on the date and time in question is because of a recreational softball league set up by the city recreation department. I paid a $15.00 fee to the recreation department to be permitted to participate.

Although Hupf's attorney embellished Hupf's account at the hearing on the motion for summary judgment, his recitation is not supported in the evidentiary record:

[Hupf] went to the park, he played his game. When the game was over he was leaving the baseball game and going back to his car—and the only way provided by the makeup of the land at the park. At that point, the city had knowingly allowed people to play baseball—catch in the area used for walking from the outlying diamonds back to their cars or to the concession stand. That is when he got hit by a ball.

Other than Hupf's affidavit and this unsubstantiated statement, there is no other evidence from either party concerning the facts surrounding the injury. The circuit court ruled that because Hupf was walking in the park, he was engaged in a recreational activity for which the county as the landowner was immune.

We first observe that the mere act of walking in a park is not dispositive of whether a person is engaged in recreational activity. We reach this conclusion from an examination of the apparent intent of the legislature as demonstrated by the language of the statute itself. While

this statute is liberally construed in favor of immunity for the landowner, *Taylor,* 147 Wis. 2d at 646, 433 N.W.2d at 294, the cardinal rule in all statutory construction is to discern the intent of the legislature. *Scott v. First State Ins. Co.,* 155 Wis. 2d 608, 612, 456 N.W.2d 152, 154 (1990).

Although a walk in the park for the purpose of exercise, relaxation or pleasure is an activity for which the owner is immune, the legislature did not intend to create a corridor of immunity from the ball field to the parking lot when the walk is inextricably connected to a non-immune activity. Section 895.52(1)(g), Stats., excepts from its definition of recreational activities "any organized team sport activity sponsored by the owner . . .." Hupf was not participating in an organized team sport at the moment of his injury. If, however, as his argument presupposes, he were traveling directly from this excepted activity by the only available avenue for the purpose of exiting the premises, the exception to immunity endures.

■■

We applied this same logic in *Hall v. Turtle Lake Lions Club,* 146 Wis. 2d 486, 431 N.W.2d 696 (Ct. App. 1988), although, under the discrete facts, to an opposite result. In *Hall,* we held that a landowner did not *lose* his immune status when a fairgoer, engaged in a recreational activity on the land, took a break to walk to the men's restroom. We said that "[t]his ordinary, necessary, and momentary diversion while still on the fair grounds certainly does not remove the landowner from the protection of the statute . . .." *Id.* at 489, 431 N.W.2d at 698. By the same reasoning, we conclude that the legislature did not intend a landowner to *gain* immunity when a participant in an organized team sport travels directly to and from the activity. In other words, walking to or from

an immune activity does not alter the landowner's status, and walking to or from a non-immune activity does not alter it either. Hupf cannot prevail at this stage of the proceedings, however, because undisputed evidentiary facts do not support his attorney's statement.[1]

The city also claims that the exception for an organized team sport does not apply because the city was not a "sponsor" of the softball league. The statute does not define "sponsor." The city, while conceding that it took the team registrations, maintained the grounds, provided umpires, scorekeepers, bases and softballs, says it was insufficiently involved to be called a sponsor. We disagree.

We note that the city's required release provides in part: "I . . . release any . . . claims for damages . . . against the . . . Parks and Recreation Department or school district . . . for . . . injuries suffered . . . at any activity *sponsored* by these groups." (Emphasis added.) The city's choice of words is also consistent with the dictionary definition of "sponsor": "a person or an organization that pays for or plans and carries out a project or activity . . .." *Webster's New Collegiate Dictionary* 1124 (1977).

---

[1] If Hupf had presented undisputed evidentiary facts that he fell within the exception to the definition of recreational immunity, he may have been entitled to partial summary judgment on the issue of recreational immunity even though the city was the moving party. This is so because sec. 802.08(6), Stats., provides: "Judgment for opponent. If it shall appear to the court that the party against whom a motion for summary judgment is asserted is entitled to a summary judgment, the summary judgment may be awarded to such party even though the party has not moved therefor."

The city maintains that the statutory reference to sponsor requires a profit motive by the landowner. This argument ignores the fact that sec. 895.52, Stats., has a direct and less obscure means of limiting recreational immunity of those who realize economic gain from the use of their land. Section 895.52(6)(a) excepts from immunity those cases where a private property owner collects money, goods or services in payment for the use in the aggregate yearly amount in excess of $2,000. The corresponding provision relating to municipal property is sec. 895.52(3)(a), excepting a municipal owner from immunity only if it charges an admission fee for spectators. We conclude that the city was a sponsor within the meaning of the statute as a matter of law.

## THE WAIVER AND RELEASE

Prior to his participation as a player in the Sunday Industrial Softball League at Appleton's Memorial Park, Hupf, age forty-one, paid a $15 fee and signed a form entitled "APPLETON PARKS AND RECREATION RESIDENT ADULT SPORTS REGISTRATION." The form included the following statement:

> In consideration of your accepting my entry, I hereby, for myself, my heirs, executors and administrators, waive and release any and all rights and claims for damages I may have against the above Parks and Recreation Department or school district and its representatives, successors and assigns for any and all injuries suffered by myself at any activity sponsored by these groups. No refund on any player fee.

Neither party disputes that injuries occasioned while playing the game itself fall within the scope of this

agreement. We conclude that there remains a disputed material fact, however, as to whether the parties contemplated release for injuries suffered while Hupf walked between the game and his car.

This release presents an issue similar to that in *Arnold v. Shawano County Agr. Soc.,* 111 Wis. 2d 203, 330 N.W.2d 773 (1983). In *Arnold,* stock car drivers at the county racetrack were required to enter into an exculpatory contract whereby they agreed not to hold liable the various parties promoting the race, including the landowner, for injuries arising out of the race. The *Arnold* court held that where the exculpatory contract is not invalid on public policy grounds, we look to the contract itself to determine its validity. *Id.* at 211, 330 N.W.2d at 777. Specifically, we examine the facts and circumstances of the agreement to determine whether it expresses the intent of the parties with particularity. *Id.* If the contract fails to do so, it will not be enforced. *Id.* Such contracts are strictly scrutinized. *Id.* at 213, 330 N.W.2d at 779. We therefore require that the contract clearly express the intent of the parties so that with the surrounding circumstances, it is clear the parties knowingly agreed to excuse the otherwise responsible party. *Id.* Where the contract is ambiguous on its face, a trier of fact may decide the intent and application of the agreement to the facts surrounding the injuries. *Id.*

Here, the trial court held that Hupf's release covered the incident as a matter of law, relying on a decision of this court that was later reversed by our supreme court. *Dobratz v. Thomson,* 161 Wis. 2d 502, 468 N.W.2d 654 (1991). Contrary to our holding, the supreme court held the exculpatory contract unenforceable as a matter of law because the plaintiff who executed it could not have knowingly agreed to exonerate the sponsors for activities

224

whose particulars were totally unknown. *Id.* at 522–23, 468 N.W.2d at 662. The plaintiff was killed following a fall while participating in a water ski show. The court noted that when the contract was signed, the potential for "very dangerous" stunts was possible, but that the stunts for the season in question had not yet been determined. The *Dobratz* court distinguished *Arnold,* where the particular circumstances surrounding the activities vere not totally unknown. *Dobratz,* 161 Wis. 2d at 522–23, 468 N.W.2d at 662. We conclude that the present circumstances are more akin to *Arnold* than *Dobratz.*

In conclusion, the parties submitted insufficient proofs to resolve the recreational immunity issue, and the city's evidentiary proofs do not speak to the intent of the parties to release the city from liability for "any activity sponsored by [the city] . . .." It is inappropriate to grant the city summary judgment on the basis of the exculpatory contract and the limited evidence as to its meaning. We therefore remand this matter for further proceedings consistent with the preceding discussion.

*By the Court.*—Judgment reversed and cause remanded.