Jeffrey J. KLOES and Connie S. Kloes, Plaintiffs-
Appellants,†

v.

EAU CLAIRE CAVALIER BASEBALL ASSOCIATION, INC.;††
Carson Park Concessions, Inc.; Transamerica
Insurance Company and Wisconsin Municipal Mutual
Insurance Company, Defendants-Respondents.

Court of Appeals

*No. 91–2778. Submitted on briefs June 9, 1992.—Decided June
30, 1992.*

(Also reported in 487 N.W.2d 77.)

†Petition to cross review denied.
††Petition to review denied.

For the plaintiffs-appellants, Jeffrey J. Kloes and Connie S. Kloes, the cause was submitted on the briefs of *Thomas D. Bell* and *Matthew A. Biegert* of *Doar, Drill & Skow, S.C.,* of New Richmond.

For the defendants-respondents, Eau Claire Cavalier Baseball Association, Inc.; Carson Park Concessions, Inc.; and Transamerica Insurance Company, the cause was submitted on the brief of *William M. Gabler* of *Garvey, Anderson, Johnson, Gabler & Geraci, S.C.* of Eau Claire.

For the defendant-respondent, Wisconsin Municipal Mutual Insurance Company, the cause was submitted on the brief of *Eric J. Wahl* of *Wiley, Wahl, Colbert, Norseng, Cray and Herrell, S.C.* of Eau Claire.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J.   Jeff and Connie Kloes appeal a summary judgment dismissing their action, on the merits, against the Eau Claire Cavalier Baseball Association (association); Transamerica Insurance Company, the association's insurer; and Wisconsin Municipal Mutual Insurance Company (WMMIC), the city of Eau Claire's insurer. They argue that the trial court erred by finding that (1) the recreational immunity statute, sec. 895.52, Stats., bars the Kloeses' action against WMMIC, and (2) Jeff Kloes voluntarily confronted an open and obvious danger, and, therefore, as a matter of law, his negligence exceeded any negligence attributable to the association.

We agree that the recreational immunity statute, sec. 895.52, Stats., bars the Kloeses' action against WMMIC because the city is immune from liability. However, we conclude that the trial court erred by holding that Jeff Kloes' negligence exceeded the association's negligence as a matter of law. The judgment is affirmed in part, reversed in part and the matter remanded for further proceedings consistent with this opinion.

The association is an amateur baseball team that plays approximately eighty games per season. Its home games are played at Carson Park in Eau Claire. The city charges the association $14 per game for use of the park, and employs a maintenance worker to prepare the park for games. The association charges an admission fee to its games.

Jeff Kloes was pitching for the association during a night game at Carson Park when he was struck in the face with a batted ball. The Kloeses sued the association, Transamerica and WMMIC.[1] They alleged that the association and the city negligently caused Jeff Kloes'

[1] The Kloeses also sued Carson Park Concessions, Inc. How-

injuries.[2] Specifically, the Kloeses claim that the inadequate lighting at Carson Park prevented Jeff Kloes from seeing the ball and reacting in time to avoid injury.

Kloes; Harvey Tompter, the association's field manager; and Bill Rowlett, the association's president, testified at their depositions that they believed the lighting at Carson Park was poor. Kloes also testified that he usually played the position of catcher, but on the night of his injury he volunteered to pitch. He stated that he knew one of the risks of pitching is being struck by a batted ball. Kloes also admitted that, on many occasions, he has observed pitchers struck and injured by batted balls.

The evidence also indicates that the city had plans to improve the lighting at Carson Park, having received complaints that it was both uneven and too dim, but the city had not yet made the improvements at the time of the accident. Alan Caskey, an expert who filed an affidavit on behalf of the Kloeses, stated that the lighting was inadequate because the Illuminating Engineering Society (IES) standards were inadequate. Lawrence Sanders, an expert on behalf of WMMIC, filed a counter-affidavit indicating that Carson Park's lighting was adequate and met the IES standards.

The association, Transamerica and WMMIC filed motions for summary judgment claiming that the city is

ever, at a hearing on the motions for summary judgment, they agreed to dismiss Carson Park from their action.

[2] In addition to common-law negligence, the Kloeses claimed that the city negligently caused Jeff Kloes' injuries by violating the safe place statute, sec. 101.11, Stats. The trial court held that the open and obvious danger rule applied to negligence based on the safe place statute as well as common-law negligence. On appeal, the Kloeses do not raise the issue of the safe place statute's applicability, and, therefore, we need not address it.

immune from liability under the recreational immunity statute, sec. 895.52, Stats., and Kloes' negligence exceeded the defendants' negligence as a matter of law because Kloes voluntarily confronted an open and obvious danger. The trial court granted summary judgment dismissing the Kloeses' action.

We review summary judgments de novo. *Grosskopf Oil v. Winter,* 156 Wis. 2d 575, 581, 457 N.W.2d 514, 517 (Ct. App. 1990). The methodology for reviewing a summary judgment has been set forth many times, and it need not be repeated here. *See Grams v. Boss,* 97 Wis. 2d 332, 338, 294 N.W.2d 473, 476 (1980).

Summary judgment is inappropriate where there is a disputed issue of material fact. *Id.* at 338, 294 N.W.2d at 476-77. The Kloeses' negligence action against the association is based solely on the allegation that the poor lighting at Carson Park prevented Jeff Kloes from seeing the batted ball and reacting in time to avoid injury. There is a factual dispute whether the lighting at Carson Park was adequate. It follows that if the lighting was adequate, Kloes would not prevail in his action. However, because this proceeding is at the summary judgment stage, we will assume for purposes of this appeal the disputed facts most favorable to Kloes.

## RECREATIONAL IMMUNITY

We first address the Kloeses' argument that the city is not immune from liability under the recreational immunity statute, sec. 895.52, Stats. This issue, involving the application of sec. 895.52 to undisputed facts, is a question of law that we review de novo. *Gonzalez v.*

*Teskey,* 160 Wis. 2d 1, 7–8, 465 N.W.2d 525, 528 (Ct. App. 1990).

Section 895.52(2)(b), Stats., provides that an owner is not liable for an injury to a person engaging in a recreational activity on the owner's property. An owner is defined as a person, including a governmental body, that owns, leases or occupies the property. Section 895.52(1)(d), Stats. An exception to immunity exists if the owner charges an admission fee for spectators. Section 895.52(4)(a), Stats. Additionally, a recreational activity includes an outdoor sport or game, but not an organized team sport activity sponsored by the owner of the property on which the activity takes place. Section 895.52(1)(g), Stats.

The parties do not dispute that the city is an "owner" of Carson Park. However, the Kloeses contend that because the city sponsored the association, the city is unprotected under the recreational immunity statute. A sponsor is a person or organization that pays for or plans and carries out an activity. *Hupf v. City of Appleton,* 165 Wis. 2d 215, 222, 477 N.W.2d 69, 72 (Ct. App. 1991). Where a city takes team registrations, maintains the grounds, and provides umpires, scorekeepers, bases and balls, it is sufficiently involved to be a sponsor of a softball league. *Id.*

Here, it is undisputed that the city charges the association a per game fee and employs a maintenance worker to prepare the park for games. However, the association makes its own season schedule and decides what tournaments to participate in. It also selects its players, hires umpires for its games and furnishes its own equipment. Based on the undisputed facts, we conclude that the city is insufficiently involved with the association's

baseball activities to fall within the definition of a sponsor.

The Kloeses also argue that because the association is an "owner" of the property under the recreational immunity statute, sponsors the baseball team and charges an admission fee, the recreational immunity statute does not apply to protect the association or the city. Because the association is a sponsor of the baseball team and also is an owner of the park as it occupies the property, *see Hall v. Turtle Lake Lions Club,* 146 Wis. 2d 486, 431 N.W.2d 696 (Ct. App. 1988), we agree that the association has no immunity under the recreational immunity statute. *See* sec. 895.52(1)(g), Stats. The association, as an owner that charges an admission fee, is not immune under the recreational immunity statute. *See* sec. 895.52(4)(a), Stats.

However, the fact that the association is unprotected by the recreational immunity statute has no bearing on the statute's application to the city. As indicated earlier, the city did not sponsor the association. Additionally, the fact that the association charged admission does not affect the city's immunity. The unambiguous language of sec. 895.52(4)(a), Stats., states that the city is subject to liability if it "charges an admission fee for spectators." The city charged the association a $14 per game fee to use the park, but it did not charge an admission fee for spectators. Only the association charged an admission fee for spectators. We therefore conclude that the city is immune from liability for Kloes' injury under the recreational immunity statute, and the trial court properly granted summary judgment in favor of the city's insurer, WMMIC.

## OPEN AND OBVIOUS DANGER

Next, the Kloeses argue that the trial court erred by finding that Jeff Kloes voluntarily confronted an open and obvious danger, and therefore, as a matter of law, his negligence exceeded any negligence attributable to the association. Where the facts are undisputed, whether a plaintiff's negligence exceeds a defendant's negligence as a matter of law is a question of law that we review de novo. *See Schuh v. Fox River Tractor Co.,* 63 Wis. 2d 728, 743–45, 218 N.W.2d 279, 287–88 (1974). The association argues that Kloes voluntarily confronted an open and obvious danger because he participated in an evening baseball game at Carson Park knowing that the lights were inadequate and that there was a danger of being hit by a batted ball. We disagree that this presents an open and obvious danger.

Wisconsin's "open and obvious danger rule" is not to be confused with the assumption of risk theory as used in other states. Wisconsin abolished assumption of risk as a defense in negligence actions. *See Gilson v. Drees Bros.,* 19 Wis. 2d 252, 258, 120 N.W.2d 63, 67 (1963).[3] Rather, in Wisconsin, where a plaintiff voluntarily confronts an open and obvious danger, his negligence, as a matter of law, exceeds any negligence attributable to the defendant(s). *Wisnicky v. Fox Hills Inn & Country Club,* 163 Wis. 2d 1023, 1024, 473 N.W.2d 523, 524 (Ct. App. 1991). The open and obvious danger rule is not an absolute defense. Rather, it is a weighing of negli-

---

[3]We acknowledge the confusion involved when Wisconsin courts refer to the abolishment of assumption of risk, but yet sometimes refer to assumption of risk principles when attempting to set forth the principles of the open and obvious danger rule.

gence as a matter of law. Its application bars the plaintiff's recovery under the contributory negligence statute, sec. 895.045, Stats.[4]

The open and obvious danger rule applies where a plaintiff voluntarily confronts an open and obviously dangerous condition and a reasonable person in the plaintiff's position would recognize the condition and the danger the condition presents. *Griebler v. Doughboy Recreational,* 160 Wis. 2d 547, 551, 466 N.W.2d 897, 898 (1991). The rule has been applied under very limited circumstances and only where there is a high degree of probability that the condition or danger confronted will result in harm. *See Scheeler v. Bahr,* 41 Wis. 2d 473, 480, 164 N.W.2d 310, 313 (1969) (danger is likely to be encountered by plunging headfirst into the unknown depths of a murky lake); *Schilling v. Blount, Inc.,* 152 Wis. 2d 608, 616-17, 449 N.W.2d 56, 59 (Ct. App. 1989) (inherent danger of a loaded pistol that is cocked); *Griebler,* 160 Wis. 2d at 559-60, 466 N.W.2d at 902 (diving headfirst into a pool of unknown depth).

Baseball is one of this nation's favorite sports. By its nature, it is not necessarily dangerous. We acknowledge there is some danger that a baseball player may be hit by a batted ball during a game. Further, this danger may be increased by inadequate lighting conditions. However, we cannot say that participating in a baseball game under these circumstances is a danger that presents a high degree of probability of harm so as to constitute an open and obvious danger.

---

[4]Section 895.045 states that a plaintiff's contributory negligence shall not bar his recovery if his negligence was not greater than the negligence of the defendant.

Generally, the apportionment of negligence is a question for the jury. *Schuh,* 63 Wis. 2d at 744, 218 N.W.2d at 287. However, where the plaintiff's negligence clearly exceeds the defendant's, we may so hold as a matter of law. *Id.* Here, Kloes may have failed to exercise ordinary care for his own safety when he pitched at a night game at Carson Park knowing the lighting was poor. However, we cannot say that his negligence, as a matter of law, is greater than any negligence attributable to the association, who also claimed the lighting was inadequate but continued to schedule the team to play night games at Carson Park.

Thus, we reverse the portion of the judgment dismissing the Kloeses' action against the association and Transamerica. We also remand the matter for a factual determination of whether the lighting at Carson Park was adequate, a determination of causal negligence and its apportionment among the parties and other proceedings consistent with this opinion.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded for further proceedings. Costs awarded to the city's insurer. Also, costs awarded to the appellants against the association and its insurer.