STATE of Wisconsin, Plaintiff-Respondent,

v.

Keith L. GRADY, Defendant-Appellant.†

Court of Appeals

*No. 92-2042-CR. Submitted on briefs March 3, 1993.—Decided March 30, 1993.*

(Also reported in 499 N.W.2d 285.)

†Petition to review denied.

553

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Mark Lukoff*, first assistant state public defender, of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *William L. Gansner*, assistant attorney general.

Before Wedemeyer, P.J., Sullivan and Fine, JJ.

FINE, J.   Keith L. Grady appeals his conviction for violating section 941.20(2)(a), Stats. (endangering safety by use of a dangerous weapon), as a party to a crime, *see* section 939.05, Stats. He contends that the trial court improperly instructed the jury on an element of the crime. We affirm.

## I.

The facts essential to this appeal are not contested. After a dispute between Grady and the grandmother of Grady's child, during which Grady was shot by a third person, Grady and some others returned to the grandmother's house and fired several rounds at the house from their car. According to Grady's statement to the police that was introduced at trial, and the testimony of one of those with Grady that night, Grady told his friends that they were to shoot at the exterior of the house and avoid the windows so no one inside the house, apparently including his child and girlfriend, would be hurt. He said that he shot at the house to demonstrate that he was not a person to be "messed with."

555

The fusillade directed at the grandmother's house was witnessed by two police officers who, after a brief automobile chase, apprehended Grady and his companions. Police inspection of the house discovered three bullet holes in the exterior of the grandmother's house, and a bullet hole through a window. Although they recovered a bullet fired from Grady's gun embedded in the house's outside wall, the police officers were unable to find any bullet that could have caused the hole in the window, and they found no bullet holes or bullets inside the house. The defense introduced evidence that shots were fired near the grandmother's house that evening prior to the incidents involving Grady.

## II.

Section 941.20(2)(a), Stats., makes it a Class E felony for any person to intentionally discharge "a firearm into vehicle or building under circumstances in which he should realize there might be a human being present therein." The trial court instructed the jury, in conformity with Wis J I—Criminal 1324, that before the jury could find Grady guilty it had to be satisfied that the State had proven three elements beyond a reasonable doubt:

> The first element requires that the defendant discharged a firearm. The term "firearm" means a weapon that acts by the force of gunpowder. To "discharge a firearm" simply means to shoot a gun.
> The second element requires that the defendant intentionally shot the gun into a building.
> "Intentionally" means that the defendant acted with the purpose to shoot the gun into the building.
> The third element requires that under the circumstances, the defendant should have realized that

there might be a human being present in the building.

The trial court did not define the word "into" for the jury.

During its deliberations, the jury sent the following note to the trial court: "We would like dictionary definition or legal definition of the word 'into' as used in Instruction 1324." Both the State and Grady's attorney suggested to the trial court that no supplemental instruction be given, and that "into" not be defined. As Grady's attorney explained to the trial court, the word "into" was "a commonly used word and they should have to decide upon themselves." The trial court nevertheless decided to re-instruct the jury on this point.

Drawing an analogy to the instruction on sexual assault, the trial court told counsel that in its view "into" meant "any penetration, however slight, from obviously, penetration means going from the outside into the inside."[1] This definition was required, the trial court had earlier explained, because, in its view, a contrary definition would lead to what it characterized as the "ludicrous" result of permitting someone to "shoot up a building as long as the caliber of the weapon or the circumstances of the event didn't result in a bullet being found inside the building or having penetrated through the walls of the building as, for instance, a person would penetrate the entrance and move into a building."

[1] The pattern jury instruction on the sexual-intercourse aspect of sexual assault tells the jury that: " 'Sexual intercourse' means any intrusion, however slight, by any part of a person's body or of any object into the genital or anal opening of another." Wis J I—Criminal 1200. This definition mirrors the definition articulated by the sexual assault statute, which provides that "any" "intrusion, however slight" is sufficient. Section 940.225(5)(c), Stats.

Grady's attorney objected to the proposed instruction, contending that it was contrary to the word's accepted dictionary definition.

The trial court gave to the jury the following supplemental instruction:

> "Into" means from the outside to the inside of, advancing or continuing forward.
>
> A shooting into a house occurs when a bullet penetrates the outside of the house or building, however slight the penetration. It does not require that there be any set distance of penetration.

## III.

As the parties recognize, the word "into" as it is used in section 941.20(2)(a), Stats., is not defined by the statute. The legislature has provided for this contingency with a general rule of construction:

> All words and phrases shall be construed according to common and approved usage; but technical words and phrases and others that have a peculiar meaning in the law shall be construed according to such meaning.

Section 990.01(1), Stats. Thus, if a word is either a "technical" word or a word that has a unique meaning in the law, that meaning governs; if the word does not have a specialized meaning, its "common and approved usage" governs. The word "into" is not a technical term of art and does not have a "peculiar meaning in the law." Accordingly, we ascertain its "common approved usage" from a non-specialized dictionary. *State v. Ehlenfeldt*, 94 Wis. 2d 347, 356, 288 N.W.2d 786, 790 (1980). That usage reveals that the word "into," as material to the statute, does not either denote or connote any minimum

amount of entry, but, rather, motion of an object towards some point without reference to the object's ultimate position at that point. *See Webster's Third New International Dictionary of the English Language* 1184 (1976). Thus, the dictionary offers the following examples:

1. "a movement from the outside to an interior part <came ~ the house> <the river ran ~ the sea> <traveled ~ the next state> <a route ~ the wilderness> <imports ~ this country> <the mountains merge ~ the plain>"

2. "in toward <sailed the boat ~ the pier> <the batter leaned ~ the pitch>"

3. "so as to impress, dent, or force inward <pressed the marble ~ the palm of his hand> <force grease ~ the bearings>"

*Id.* at 1184-1185 (1976).[2] Thus, as the State cogently points out, in common parlance phrases such as "to cut 'into' an orange" means to pierce the skin without regard to depth.

---

[2] Although *Black's Law Dictionary* is not authoritative here because the word "into" is not a word that has "a peculiar meaning in the law," *Black's* definition, as the italicized portion below indicates, also recognizes that no minimum amount of entry is required:

A preposition signifying to the inside of; within. It expresses entrance, or passage from the outside of a thing to its interior, and follows verbs expressing motion. *It has been held equivalent to, or synonymous with, "at,"* "inside of," and *"to,"* and has been distinguished from the words "from" and "through."

*Black's Law Dictionary* 822 (6th ed. 1990). Thus, according to *Black's*, propelling an object "into" a thing is equivalent to propelling that object "at" or "to" that thing.

The trial court's supplemental instruction to the jury conformed with the "common approved usage" of the word "into," and was well within the ambit of its discretion to instruct the jury on the applicable legal principles. *See State v. Selders*, 163 Wis. 2d 607, 620, 472 N.W.2d 526, 531 (Ct. App. 1991) ("A trial court has broad discretion in instructing the jury on the law, and we will not reverse if the instruction at issue correctly states the law and is supported by facts that were properly before the jury.").

*By the Court.*—Judgment affirmed.