**COMMONWEALTH of Pennsylvania, Appellee**

v.

**James McCOY, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 5, 2006.

Filed June 26, 2007.

---

Karl Baker, Philadelphia, for appellant.

Hugh J. Burns, Jr., Asst. Dist. Atty., Philadelphia, for Com., appellee.

BEFORE: JOYCE, KLEIN and BOWES, JJ.

OPINION BY JOYCE, J.:

¶ 1 Appellant, James McCoy, appeals from the judgment of sentence dated April 27, 2005, in the Court of Common Pleas of Philadelphia County, following his conviction of carrying a firearm without a license, carrying a firearm on a public street, possession of a firearm by a convicted felon, discharge of a firearm into an occupied structure, possession of an instrument of crime, simple assault, and recklessly endangering another person.[1] In this case of first impression, we are asked to decide whether an individual commits the offense of discharging a firearm into an occupied structure, 18 Pa.C.S.A. § 2707.1, while standing within the structure when discharging the firearm. Upon review, we find the unambiguous language of § 2707.1 prohibits discharging a firearm "from any location" and does not require an individual to discharge a firearm from "outside" the structure. Accordingly, we affirm the judgment of sentence. The relevant facts, as adduced by the trial court, and procedural history are as follows.

> The facts underlying the instant case concern an incident that occurred on July 27, 2004 at the Old Country Buffet Restaurant ("restaurant") located at 4640 Roosevelt Boulevard. N.T. 03/16/2005, p. 18. At that time, the complainant—Mr. James Hargrove, was working as the manager of the restaurant; the restaurant was very busy at that time—with about two-hundred and fifty (250) customers present. *Id.* at 22. At around 7:00 p.m., the [Appellant] entered the restaurant, approached Mr. Hargrove and told him he had become sick from eating at the restaurant earlier in the day. *Id.* at 25. Mr. Hargrove asked the [Appellant] questions to ascertain whether he had actually eaten at the restaurant earlier in the day—such as what he ate and whether he had a receipt. *Id.* at 26. Meanwhile, Mr. Hargrove made his way to his office to attend to business for a group of customers who had entered the restaurant. *Id.* at 30. The [Appellant] followed the complainant to the office. *Id.* Mr. Hargrove told the [Appellant] to remain in a chair outside of the office. *Id.* Subsequently, the [Appellant] entered the office and reached into his pocket for a gun. *Id.* at 33. Mr. Hargrove fled the office and ran into the kitchen area. *Id.* at 34. The [Appellant] followed Mr. Hargrove and in the ensuing moments fired his gun approximately five times in the direction of the kitchen—where Mr. Hargrove had entered. *Id.* at 58–66. The [Appellant] then left the premises. *Id.* at 66.

Trial Court Opinion, 04/05/06, at 1–2 (citations omitted).

¶ 2 Following a non-jury trial, Appellant was convicted of the foregoing charges. On April 27, 2005, Appellant was sentenced to an aggregate term of 6 to 15 years' imprisonment.[2] Appellant filed a timely post-sentence motion that was ultimately denied by operation of law pursuant to Pa.R.Crim.P. 720(B)(3).

---

1. 18 Pa.C.S.A. § 6106(A), 18 Pa.C.S.A. § 6108, 18 Pa.C.S.A. § 6105, 18 Pa.C.S.A. § 2707.1, 18 Pa.C.S.A. § 907, 18 Pa.C.S.A. § 2701 and 18 Pa.C.S.A. § 2705.

2. Specifically, Appellant was sentenced to a term of 4 to 8 years' imprisonment on possession of a firearm by a convicted felon, a consecutive 1 to 5 years' imprisonment on the possessing instruments of a crime, and a consecutive 1 to 2 years' imprisonment on the simple assault charge. No further penalties were imposed for the crimes of carrying a firearm without a license, carrying a firearm on a public street, discharge of a firearm into an occupied structure, and recklessly endangering another person.

¶ 3 On September 13, 2005, Appellant filed a Notice of Appeal. Appellant, in response to the trial court's Pa.R.A.P.1925 order, filed a timely statement of matters complained of on appeal, pursuant to Pa. R.A.P.1925(b). On April 5, 2006, the trial court filed its Pa.R.A.P.1925(a) opinion.

¶ 4 On appeal, Appellant raises the following issues for our review:

A. Did not the trial court err in convicting [A]ppellant of discharging a firearm into an occupied building where the statute requires that a person fire "into" an occupied building to be guilty, but [A]ppellant fired a weapon while inside the building?

B. Did not the trial court improperly apply sentencing guidelines to [A]ppellant's sentence calculation where the new guidelines were not yet in effect, thereby raising [A]ppellant's guideline range and final sentence?

Appellant's Brief, at 4.

¶ 5 In his first issue on appeal, Appellant raises a challenge to the sufficiency of the evidence. In reviewing this issue, we are mindful of the following standard of review:

In analyzing the sufficiency of the evidence, we view all the evidence admitted at trial in the light most favorable to the Commonwealth as verdict winner, and draw all reasonable inferences in its favor. We then determine whether the evidence was sufficient to have permitted the trier of fact to find that each element of the crimes charged was established beyond a reasonable doubt. Moreover, it is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence, and the factfinder is free to believe all, part, or none of the evidence.

*Commonwealth v. Koehler*, 914 A.2d 427, 435–436 (Pa.Super.2006) (citation omitted).

¶ 6 Instantly, Appellant avers the evidence was insufficient to support his conviction of discharging a firearm into an occupied structure, 18 Pa.C.S.A. § 2707.1. According to Appellant, he discharged the firearm while inside the building and that "no evidence existed that he fired his gun while *outside* the building *into* the edifice." Appellant's Brief, at 10 (emphasis added). Appellant surmises that in order to be convicted under § 2707.1, an individual must discharge a firearm from outside the building into the building, rather than from within the building.

¶ 7 An individual commits the offense of discharging a firearm into an occupied structure when he/she "knowingly, intentionally or recklessly discharges a firearm from any location into an occupied structure". 18 Pa.C.S.A. § 2707.1. When interpreting this statute, we are mindful of the following principles of statutory interpretation and construction:

The principal objective of statutory interpretation and construction is to ascertain and effectuate the intention of the legislature. When possible, every statute should be construed to give effect to all its provisions. Courts must read and evaluate each section of a statute in the context of, and with reference to, the other sections of the statute, because there is a presumption that the legislature intended the entire statute to be operative and effective.

The plain language of a statute is the best indication of legislative intent. The basic tenet of statutory construction requires a court to construe words of the statute according to their plain meaning. When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

*Commonwealth v. Poncala,* 915 A.2d 97, 104 (Pa.Super.2006) (internal citations and quotation marks omitted).

¶ 8 Instantly, Appellant admits the language of the statute is unambiguous. Appellant's Brief, at 11. However, Appellant contends the trial court erred in focusing on the language "from any location" when convicting him under the statute. Appellant avers that the trial court's interpretation of the statute "requires adding language to an otherwise unambiguous statute—to wit, from any location into an occupied structure including from within the structure at issue." *Id.* at 12 (emphasis omitted).

¶ 9 Despite Appellant's restrictive interpretation of the statute, we find the plain language of § 2707.1 clearly prohibits discharging a firearm "from any location" and does not require a defendant to discharge a firearm from "outside" the structure. The clear and unambiguous wording of the statute clearly delineates a defendant's location as "from any location", and, despite Appellant's argument to the contrary, does not limit a defendant's location to "outside" the structure when discharging the firearm.[3] In light of the clear and unambiguous wording of § 2707.1, we are precluded from discarding it.

¶ 10 As noted by Appellant, there are no reported Pennsylvania cases interpreting § 2707.1. Therefore, Appellant attempts to substantiate his narrow reading of the statute by discussing legal authority from other jurisdictions, including *People v. Stepney,* 120 Cal.App.3d 1016, 175 Cal. Rptr. 102 (Cal.Ct.App.1981), *State v. Grady,* 175 Wis.2d 553, 499 N.W.2d 285 (App. 1993), and *State v. Mancuso,* 321 N.C. 464, 364 S.E.2d 359 (1988). As discussed *infra,* these cases are factually distinguishable from the case at bar and, therefore, not persuasive in our analysis.

¶ 11 In *Stepney,* the appellant fired a bullet into a television set while standing in the living room of a dwelling. The appellant was convicted of California Penal Code Section 246, which prohibits discharging a firearm *at* an inhabited dwelling house, occupied building or occupied motor vehicle. On appeal, the California Appellate Court reversed the conviction, concluding that firing a weapon within a dwelling did not constitute a violation under the statute. In arriving at its decision, the Court recognized the competing arguments that a defendant cannot discharge a firearm at a building/automobile from within a structure, or, alternatively, a defendant can discharge a firearm "at" a building/automobile from the outside or the inside. *Id.* at 1019, 175 Cal.Rptr. 102. However, the Court found that the term "at" was ambiguous and susceptible to many meanings. Therefore, it construed the term in favor of the appellant. *Id.*

¶ 12 In *Grady,* the appellant and his cohorts fired several rounds at a house from their vehicle. Although police found three bullet holes in the exterior of the house and a window, they were unable to locate any bullets or bullet holes inside the house. The defendant was ultimately convicted of Wisconsin statute § 941.20(2)(a), which prohibits discharging "a firearm into a vehicle or building under circumstances in which he should realize there might be a human being present therein". *Id.* at 556, 499 N.W.2d 285.

¶ 13 On appeal, the defendant alleged that the trial court improperly instructed the jury on the definition of "into". At trial the trial court gave the following supplemental instruction:

---

**3.** Moreover, an individual commits an offense under § 2707.1 when he discharges a firearm from any location within a structure, from one room to another.

"Into" means from the outside to the inside of, advancing or continuing forward.

A shooting into a house occurs when a bullet penetrates the outside of the house or building, however slight the penetration. It does not require that there be any set distance of penetration.

*Id.* at 558, 499 N.W.2d 285.

¶ 14 The Wisconsin appellate court affirmed the appellant's conviction and concluded that term "into" was not defined under the statute and was not a technical word of art. *Id.* Therefore, the appellate court concluded that the supplemental instruction was within the "common approved usage" of the word "into", "and as well within the ambit of its discretion to instruct the jury on the applicable legal principles". *Id.* at 559, 499 N.W.2d 285. Furthermore, the appellate court found that the terms usage "reveals that the word into, as material to the statute, does not either denote or connote any minimum amount of entry, but, rather, motion of an object towards some point within reference to the object's ultimate position at that point". *Id.* at 558–59, 499 N.W.2d 285 (quotation marks omitted), *citing* Webster's Third New International Dictionary of the English Language 1184 (1976).

¶ 15 In *Mancuso*, the appellant shot the victim several times in the chest while the victim sat inside of a vehicle. During the shooting, the appellant was standing outside the vehicle and stuck his weapon inside the vehicle while shooting. Ultimately, the appellant was convicted of a North Carolina statute, which prohibits discharging a firearm "into any ... vehicle ... while it is occupied ...". *Id.* at 362, *citing* N.C.G.S. § 14–34.1.

¶ 16 On appeal, the appellant contended the evidence was insufficient to support his conviction since the gun was inside the victim's car when he discharged it. The North Carolina appellate court affirmed the conviction and held that "a firearm can be discharged 'into' occupied property even if the firearm itself is inside the property, so long as the person discharging it is not inside the property." *Id.*

¶ 17 In the case *sub judice,* § 2707.1 clearly prohibits discharging a firearm, from any location, into an occupied structure. Unlike the criminal statutes in *Stepney, Grady,* and *Mancuso,* which do not incorporate the term "from any location" in its statute, the clear and unambiguous wording of § 2707.1 does not limit a defendant's location to outside of a structure when discharging a firearm. As these cases are both factually and legally distinguishable from the case at bar, we find them unpersuasive and irrelevant to our analysis.

¶ 18 In his second issue on appeal, Appellant contends the trial court improperly calculated the sentencing guideline ranges for the crime of possession of a firearm by a convicted felon, 18 Pa.C.S.A. § 6105. Appellant alleges the trial court applied the Sixth Edition of the Sentencing Guidelines, rather than the applicable Fifth Edition, when sentencing Appellant to four to eight years' imprisonment. Appellant's assertion is inaccurate. The trial court specifically noted that the effective guidelines only called for a three year sentence, but the trial judge went on to use his discretion to impose a greater sentence. In addition to stating other reasons for the higher sentence, the judge did note that the guidelines were since increased from three to four years. However, it is clear the judge understood the guidelines and was using his discretion to sentence outside those guidelines.

¶ 19 Moreover, and as correctly noted by the Commonwealth, Appellant failed to raise this particular issue in his post-sen-

tence motion or by raising the claim during the sentencing proceeding. Accordingly, Appellant's sentencing claim has been waived. *See Commonwealth v. Shugars*, 895 A.2d 1270 (Pa.Super.2006) (holding that discretionary aspects of sentencing claims must be raised during the sentencing proceedings or in a post sentence motion in order to be preserved on appeal).

¶ 20 Judgment of sentence affirmed. Jurisdiction relinquished.